1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAUSALITO/MARIN COUNTY
CHAPTER OF THE CALIFORNIA
HOMELESS UNION, et al.,

Plaintiffs,

v.

CITY OF SAUSALITO, et al.,

Defendants.

Case No.  21-cv-01143-EMC

ORDER DENYING PLAINTIFFS'
MOTION FOR ORDER TO SHOW
CAUSE AND FOR MODIFICATION OF
PRELIMINARY INJUNCTION

Docket No. 55

On December 9, 2021, the Court heard:  (1) Plaintiffs' motion for an order to show cause

regarding contempt and for modification of the preliminary injunction and (2) Defendants' cross-

motion for modification of the preliminary injunction.

## I.    CONTEMPT

The Court addresses first the contempt motion.

> In the Ninth Circuit, the moving party has the initial burden to show
> "by clear and convincing evidence that the contemnors violated a
> specific and definite order of the court."  *In re Bennett*, 298 F.3d
> 1059, 1069 (9th Cir. 2002) (citation and quotation marks omitted).
> Once the moving party has satisfied its burden, the "burden then
> shifts to the contemnors to demonstrate why they were unable to
> comply."  *Id.* (citation and quotation marks omitted).  Generally, a
> violation is found where a party fails "to take all reasonable steps
> within the party's power to comply" with a court order.  *Reno Air
> Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006)
> (citation and quotation marks omitted).

*SEC v. Schooler*, No. 3:12-cv-2164-GPC-JMA, 2014 U.S. Dist. LEXIS 162847, at *4 (S.D. Cal.

Nov. 20, 2014).  "[C]ontempt need not be willful; however, a person should not be held in

contempt if his action appears to be based on a good faith and reasonable interpretation of the

1    court's order." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (internal

2    quotation marks omitted).

3           Plaintiffs have failed to show that Defendants violated specific terms of the preliminary

4    injunction by clear and convincing evidence.  For example, the preliminary injunction does not

5    contain any specific provision as to Defendants' obligations regarding protecting campers from

6    weather conditions.  Furthermore, assuming Defendants had obligations, Plaintiffs have not

7    shown, by clear and convincing evidence, that those obligations were not met.  *See, e.g.*, Zapata

8    Decl. ¶ 8 (testifying, *inter alia*, that the City provided gravel, sleeping bags, hygiene kits, tarps,

9    tents, etc. and that the City coordinated with Marin County and the Red Cross to find shelter

10   beds).

11          To the extent Plaintiffs contend Defendants violated the preliminary injunction because

12   they have not put in larger sinks or automated flushometers in the bathrooms, *see* Powelson Reply

13   Decl., Ex. A (Operations and Maintenance Plan), that also was not specifically required by the

14   preliminary injunction.  The Court agrees with Plaintiffs that the issuance of the preliminary

15   injunction was implicitly predicated on Defendants providing clean and useable bathrooms but

16   there is not clear and convincing evidence that Defendants have not done so.  The sewage

17   problem, for example, does not appear to be the result of the failure to put in larger sinks or

18   automated flushometers but rather because towels were stuffed down pipes.  *See* McGowan Decl.

19   ¶ 3.  With respect to fecal contamination at or near the encampment site (whether because of the

20   tampering with the pipes or otherwise), there is no indication that this problem was created by

21   Defendants or was known to have existed without attempts at remediation.  In fact, Defendants

22   have taken and continue to take steps to investigate and/or remediate.  To the extent there are

23   disputes over remediation, the Court expects the parties to continue their discussions with Judge

24   Illman to resolve this concern.

25          Plaintiffs also suggest that the preliminary injunction has been violated because

26   Defendants have not provided mobile showering.  *See* Powelson Reply Decl. ¶ 25 & Ex. R (sign

27   posted by Marin Mobile Care (dated 11/18/2021) stating: "At the City of Sausalito's request,

28   showers are on hold until further notice").  Similar to above, the Court agrees with Plaintiffs that

the issuance of the preliminary injunction was implicitly predicated on mobile showers being available for campers' use at Marinship Park. This issue, however, was not raised in Plaintiffs' opening brief. In fact, it was not raised until Plaintiffs filed a brief just three days before the Court hearing on December 9. In any event, there is no indication that the hold on mobile showering is a permanent situation as opposed a temporary one while the City was responding to the issue of fecal contamination at or near the encampment site.

Finally, Plaintiffs contend that Defendants have violated the preliminary injunction by enforcing the day camping prohibition. Plaintiffs are correct that the preliminary injunction did enjoin Defendants from enforcing the day camping prohibition, *see* Docket No. 48 (Order at 7), but Plaintiffs ignore the context of that injunction. The Court prohibited enforcement of the day camping prohibition *with respect to the encampment at issue* – first when it was at Dunphy Park and then at Marinship Park. That was the matter brought to the Court to resolve. The Court was not asked to address day camping throughout the City. To the extent Plaintiffs contend that they were engaging in First Amendment activity by setting up day camps in protest at, *e.g.*, Robin Sweeny Park, that is a different issue that has not properly been raised and that is not currently before the Court.

Accordingly, for the reasons stated above, Plaintiffs' contempt motion is denied.

## II.     MODIFICATION OF THE PRELIMINARY INJUNCTION

Both parties have moved for modifications to the preliminary injunction. "A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000).

A.     Plaintiffs' Requests

- **Enjoining enforcement of the overnight camping prohibition.** Plaintiffs ask the Court to issue a preliminary injunction that enjoins enforcement of the overnight camping prohibition. Under the current City ordinance, overnight camping is prohibited, "except for area(s) of Marinship Park designated by the Interim City Manager or her designee . . . by persons who have no option to sleep indoors,

3

1    pending further action by the City Council." Plaintiffs are asking for this

2    modification on the basis that Marinship Park is no longer a safe place to be.

3    However, Plaintiffs have not sufficiently established that this is true, particularly as

4    Defendants are asking that the encampment be relocated to the tennis courts

5    (adjacent to the current encampment site) which, as discussed below, is an adequate

6    temporary site. The request for modification is therefore denied.

7    • **Enjoining any and all prohibitions on outside camping.** Plaintiffs argue that

8    there can be no prohibitions on camping outside because the City has failed to

9    provide indoor housing. Plaintiffs rely on *Martin v. City of Boise*, 920 F.3d 584,

10   604 (9th Cir. 2019) ("hold[ing] that an ordinance violates the Eighth Amendment

11   insofar as it imposes criminal sanctions against homeless individuals for sleeping

12   outdoors, on public property, when no alternative shelter is available to them"); *id.*

13   at 616 (stating that "the Eighth Amendment prohibits the imposition of criminal

14   penalties for sitting, sleeping, or lying outside on public property for homeless

15   individuals who cannot obtain shelter"); *id.* at 617 (stating that, "so long as there is

16   a greater number of homeless individuals than the number of available beds, the

17   jurisdiction cannot prosecute homeless individuals for involuntarily sitting, lying,

18   and sleeping in public"; "as long as there is no option of sleeping indoors, the

19   government cannot criminalize indigent, homeless people for sleeping outdoors, on

20   public property, on the false premise they had a choice in the matter") (internal

21   quotation marks omitted). But Plaintiffs have oversimplified *Martin*. In *Martin*,

22   the Ninth Circuit specifically noted that "[o]ur holding is a narrow one. . . . [W]e in

23   no way dictate to the City that it must provide sufficient shelter for the homeless, or

24   allow anyone who wishes to sit, lie, or sleep on the streets . . . *at any time and at*

25   *any place*." *Id.* (internal quotation marks omitted; emphasis added). *Martin*

26   prohibits a ban on all camping, not the proper designation of permissible areas.

27   The request for relief is therefore denied.

28   • **Ordering improvements at Marinship Park.** Plaintiffs ask the Court to order

4

Defendants to make improvements at Marinship Park – *e.g.*, "secure the fencing, elevate the height of tents and pathways above flood level and/or create a flood-diversion system, immediately repair any storm-related damages to adjacent sewer lines, infrastructure etc." Mot. at 5.  The Court finds this request moot in light of its holding below, permitting Defendants to relocate the encampment to the tennis courts pending further investigation and remediation.

- **Appointing a special master regarding policing.**  Finally, Plaintiffs request that the Court appoint a special master to investigate the conduct of the City Police Department – including, the failure of the responding officers to take Ms. Wild's report, the "handing off" of Ms. Wild's complaint to the Marin County Sheriff's Department, and so forth.  The Court denies Plaintiffs' relief.  There is sufficient evidence that the City is not sweeping the Wild incident under the rug but rather has taken action in response, which at least facially appears reasonable.  The Court is not inclined at this juncture to micromanage what takes place at the encampment site given that there are laws already existing to protect both parties' rights (*e.g.*, on Plaintiffs' side, there are civil rights laws that may be invoked, and, on Defendants' side, there are criminal laws, nuisance laws, etc.).

B.   Defendants' Requests

- **Establishing a code of conduct for the encampment.**  Defendants ask the Court to establish a code of conduct for the encampment because there is an increasing number of crimes and other health and safety risks.  As noted above, at this juncture, the Court is not inclined to micromanage the situation.  However, if the parties are able to reach agreement between themselves on a Code of Conduct (whether with or without the assistance of Judge Illman), they are free to do so.

- **Moving the encampment to the tennis courts.**  Defendants ask to relocate the encampment to three City-owned tennis courts in or adjacent to Marinship Park.  *See* Zapata Decl., Exs. B-C (diagram of proposed layout for tennis court area and aerial photos of tennis courts and existing encampment).  They assert that this is a

United States District Court
Northern District of California

1     better area particularly to protect the encampment from future storms.  *See, e.g.*,

2     Zapata Decl. ¶ 10 ("The tennis courts already have a hard, improved surface, so

3     they will not be prone to flooding, pooling water, or becoming muddy during rain

4     events.").  Defendants add that they will provide wood platforms to use in the

5     relocated encampment, *see* Zapata Decl., Ex. A (pictures of wood platforms) –

6     "which will keep tents off the ground and dry during rain events.  The platforms

7     will include hardware that enables the residents to securely attach their existing

8     tents," but "[t]he City will also purchase new stake-less tents and provide them free

9     of cost to any residents who want them."  Zapata Decl. ¶ 11.

10     At the hearing, Plaintiffs adamantly opposed the relocation, primarily on two grounds.

11 First, they argued that there is a safety risk because the tennis courts are close to the current site

12 which as fecal contamination and/or because the courts have cracks in the surface through which

13 contaminated water could still flow.  There is insufficient evidence, however, to support Plaintiffs'

14 claim of a safety risk.  Although there does appear to be fecal contamination at the current site,

15 there is insufficient evidence that any contamination cannot be remediated and/or that any

16 contamination would impact persons if they were encamped on platforms on the tennis courts.

17 Plaintiffs also argued that there is a significant injury to dignity to moving campers to the tennis

18 courts because the area is fenced, with the fences reaching some 10-12 feet in height (*i.e.*,

19 comparable in height to fences at prisons).  Plaintiffs' argument is not convincing.  The fences at

20 the tennis courts are pre-existing – *i.e.*, they were in place well before the dispute between the

21 parties and were not erected for the purpose of imprisoning or restricting people.  Moreover,

22 although there are fences around the tennis courts, people are free to come and go.  Finally, the

23 Court notes that, at this point, the relocation to the tennis courts is so that Defendants can

24 investigate and/or remediate the current site, as necessary.

25     Accordingly, the Court hereby modifies the preliminary injunction so that Defendants may

26 relocate the encampment site to the tennis courts.  To be clear, the Court expects, absent good

27 cause, the tennis court site to include the wooden platforms described by Defendants.  Also,

28 Defendants shall offer campers the tents described in their papers.  Moreover, Defendants must

maintain conditions to insure the health and safety of campers, including keeping the bathrooms in clean and operable condition and provide mobile showers as promised.

### III.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' contempt motion is denied, as is their motion for modification of the preliminary injunction.  Defendants' motion for modification is granted in part and denied in part.  If there are future disputes, the parties are directed to meet and confer with the assistance of Judge Illman.

This order disposes of Docket No. 55.


**IT IS SO ORDERED**.


Dated: December 13, 2021

_____
EDWARD M. CHEN
United States District Judge